SAM McCLAIN v. THE STATE.

No. 5932. Decided March 23, 1921.

1.—Theft of Cattle—Charge of Court—Practices on Appeal.

Where, upon trial of theft of cattle, the trial court refused the requested peremptory instructions for acquittal, based on the insufficiency of the tes- timony, there was no reversible error.

**2.—Same—Evidence—Tracks—Bill of Exceptions.**

Evidence, such as tracks of livestock, crossing from one pasture to the other where the fence had been let down, and that the calf tracks were accompanied by two horse tracks, would be circumstances tending to show human agency in the moving of the cattle, and would be to that extent material on the issue of theft; and in the absence of a sufficient bill of exceptions, there was no reversible error in overruling objection to this testimony.

**3.—Same—Evidence—Tracks—Rule Stated—Comparison.**

It is well settled that in order to enable a witness to testify to the similarity of tracks, something more must appear than a casual observation or comparison, and where witness was permitted to testify that certain horse tracks which he saw at one place were similar to those seen by him at another place, without showing any peculiarity or in what way such tracks could be identified, the same was reversible error. Following Mueller v. State, 85 Texas Crim. Rep., 346, and other cases.

**4.—Same—Evidence—Other Transactions—Other Offenses.**

Where, upon trial of theft of cattle, the State was permitted to prove that about the time the missing cattle were found, the defendant told certain State's witnesses that a certain pasture was under his control, and that his brand was on some of the cattle in said pasture, it was reversible error to admit testimony that in other pastures besides the one so indicated were found a number of cattle belonging to the party injured whose brand had been changed to other brands than that given the witnesses by defendant as his.

**5.—Same—Other Offenses—Evidence—Limiting Testimony.**

Where defendant was charged with the taking of one animal, no evidence should be admitted that other stolen property was found in possession of the accused aside from that alleged in the indictment without the necessary instructions limiting the jury's consideration of such evidence.

**6.—Same—Venue—Charge of Court.**

Where the evidence sufficiently showed that the place where the alleged cattle were taken was in the county of the prosecution, the court was justified in the submission of the issue of theft in said county.

**7.—Same—Ownership—Foreman—Actual Control and Management—Variance.**

Where upon trial of theft of cattle the evidence sustained the allegation of ownership and possession in the person alleged in the indictment, and that he had care, control, and management of the animal alleged to have been taken, there was no variance in the allegation and proof; although he had a foreman in charge of the ranch under his instructions, etc.

Appeal from the District Court of Kent. Tried below before the Honorable W. R. Chapman.

Appeal from a conviction of theft of cattle; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*J. E. Robinson,* and *Stinston, Chambers & Brooks,* for appellant.— On question of the insufficiency of the evidence: Clifton v. State, 47 S. W. Rep., 642; Harris v. State, 31 id., 388; Vails v. State, 128 id., 1117.

On question of ownership and possession: Bonner v. State, 125 S. W. Rep., 22.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

LATTIMORE, Judge.—Appellant was convicted in the District Court of Kent County of the theft of one head of cattle from W. A. Newman, and his punishment fixed at two years in the penitentiary.

Appellant introduced no evidence. That of the State showed that in the early part of the year 1919 appellant was living in Kent County on a place belonging to his sister, Mrs. Pursley, who seems to have owned rather extensive ranch properties. Joining her ranch on the north was that of Mr. Newman, who had for his foreman one Sam Graves. Newman had a large number of calves and other cattle, and in February, upon information received, Graves began to make search and found in the pastures of Mrs. Pursley some thirty-three head of the Newman cattle, being thirty-one yearlings and a cow and calf. Some of these had their marks and brands freshly changed in various ways. A number of them were found in what was called a small pasture immediately joining the premises occupied by appellant and his family. Others were found in other pastures of Mrs. Pursley. A day or two after all or part of these cattle were located by Mr. Graves, accompanied by two inspectors of the Cattle Raisers Association, he met appellant a mile or two from his house, and they engaged him in conversation. The material parts of said conversation were that he stated to them that he controlled a certain pasture that was indicated, and stated that he owned a number of cattle, and that his brand was U S. These witnesses agree that they found in the pasture, the control of which appellant stated was in him, thirteen of Mr. Newman's yearlings whose brands had been altered by burning over them the brand U S. In this pasture was also found two other of Mr. Uewman's animals branded differently. In all said parties found, as stated, thirty-three head of Mr. Newman's cattle which they took into their possession and drove away. The cow and calf among this number were branded with a double E brand over their old brands. It was in testimony that a man named Murdock claimed the double E brand, but that he never claimed this particular cow and calf. Mr. Echols testified that nine of the cattle found by said parties in Mrs. Pursley's pasture were calves sold by him to Mr. Newman, and that they had been recently branded BE. Mr. Overfelt testified that most of Mrs. Pursley's pastures were in Kent County, and that the place where ap-

pellant lived was in Kent County, which disposes of one of the contentions made by appellant to the effect that the trial court erred in submitting to the jury the issue of theft in Kent County. This witness also testified that in the latter part of 1918 and early part of 1919 appellant and another party would often go out looking for cattle and not return until in the night, and that in the early part of 1919 he observed the presence of animals in Mrs. Pursley's pasture freshly branded US. The indictment in this case was returned in March, 1919, and it was shown by the sheriff that he was unable to locate the appellant in Texas until October of that year when appellant sent him word to come out and get him, which he did at the place of appellant's residence. These are substantially the facts, except such as may be discussed in connection with certain bills of exception.

Appellant's first bill of exceptions is to the action of the trial court in refusing a requested peremptory instruction of acquittal based on the insufficiency of the testimony. We think no error appears in this bill.

Appellant's bill of exceptions No. 3 was to the overruling of his objection to the testimony of the witness Graves to the effect that he saw calf tracks and two horse tracks leading from the pasture of Mr. Newman into the Pursley pastures. The stated objection was that it was a conclusion of the witness, that the tracks were not identified, and that it was immaterial. We do not think the question as to whether certain tracks were calf and horse tracks, called for an opinion such as might not be given by the foreman of a ranch. The facts are not sufficiently stated in the bill to show how the question would be immaterial. Evidence that the tracks crossed from one pasture to the other, where the fence had been let down, and that the calf tracks were accompanied by two horse tracks, would be circumstances tending to show human agency in the moving of the cattle, and would to that extent be material as bearing upon the issue of theft of same.

Appellant's bill of exceptions No. 4 sets out that the witness Graves was permitted to testify that certain horse tracks, which he saw at one place, were similar to those seen by himself at another place, over the objection that no peculiarity in such tracks was shown and nothing stated by which same could be identified, etc. The court should have sustained this objection. In Parker v. State, 46 Texas Crim. Rep., 463, and in the more recent case of Mueller v. State, 85 Texas Crim. Rep., 346, 215 S. W. Rep., 93, we had occasion to discuss the rules regarding tracks, and it seems to be well settled that in order to enable a witness to testify to the similarity of tracks something more must appear than a casual observation or comparison.

By several bills of exception it was shown that the trial court admitted evidence of the finding in the Pursley pastures of other cattle than those branded in the brand which appellant stated to Graves and the inspectors to be his. In other words, the State proved that about the time the missing cattle of Newman were found, appellant told

Graves and the inspectors that a certain pasture was under his control, that he had some cattle, that his brand was US. It was also testified that in other pastures besides the one so indicated said parties found a number of Mr. Newman's cattle whose brands had been changed to other brands than that given them by appellant as his. These other pastures were not shown to be under appellant's control, and there is nothing to indicate that he claimed to own any cattle of brands other than of US. The finding in the possession of the accused, or proof of the loss of cattle not found under appellant's control, or not bearing the brand claimed by him, would seem to us inadmissible. While under certain well known rules contemporaneous thefts of other property may be proven, and the finding in the possession of the accused of other property taken at or about the time of that charged in the given case, may also be shown, still where proof of the guilty connection of the accused with the taking rests almost, if not entirely, on the fact of possession by him of property recently stolen, we know of no authority in which it is held that proof may be made of the theft of other property not found in his possession, and of the taking of which by the accused there is no other evidence. There is nothing in the record before us beyond general suspicion to connect appellant with the cow and calf branded EE found in Mrs. Pursley's pasture, nor with the nine Echols yearlings found there branded BE.

In this connection we also call attention to the fact that but one animal is herein alleged to have been stolen, and in case evidence be admitted that other stolen property was found in possession of the accused aside from that alleged in the indictment, the court would be under the necessity, not only of limiting the jury's consideration of such evidence to one of the well settled exceptions so often discussed, but should also instruct the jury that they can consider same for no purpose unless they believe beyond a reasonable doubt that such property was stolen within the definition of that term.

We think the evidence sufficiently shows that the pastures of Mrs. Pursley and the place where appellant lived were in Kent County, and that the court was justified in the submission of the issue of theft in said county.

The record before us seems to sustain the allegation of ownership and possession in W. A. Newman. Mr. Graves, who was Mr. Newman's foreman, testified that he had only charge of the ranch under Mr. Newman's instructions, and could neither sell nor dispose of anything or move it from place to place, and that Mr. Newman was out there and gave matters on the ranch his personal supervision most of the time. Mr. Newman testified as a witness that he had the actual care, control and management of the animal whose theft was charged. We think there was no variance in the allegation and proof. Hartman v. State, 85 Texas Crim. Rep., 582, 213 S. W. Rep., 936.

For the errors above mentioned the judgment of the trial court will be reversed and the cause remanded.

*Reversed and remanded.*